# CLARENCE W. ROWLEY ET AL., TRUSTEES, PETITIONERS.

## Suffolk, February, 1907. ·

### *Charitable Trust — Power of Sale in Trustee.*

This is a petition brought under Chapter 344 of the Acts of 1906 by the trustees under a trust indenture to determine their power to sell certain real estate held by them thereunder. The Attorney-General has appeared and filed a statement that he does not wish to be heard. By a trust instrument dated January 29, 1906, it was agreed that certain real estate previously conveyed by one James L. Simonds to the petitioner Rowley should be held by him upon a public charitable trust, namely: for the erection and maintainance of a female seminary to be administered by him and by Everett C. Bumpus, Esquire, as associated with him in said trust. The first clause of the indenture provided that said Rowley may bargain and sell or mortgage any part or parts of the said real estate subject to the assent of said Bumpus in writing and a release by him of all right, title or interest which may in any way rest in him under the terms of the indenture, with a provision that no purchaser shall be liable for the application of any purchase money. The second and third clauses provide for a reconveyance under certain conditions not now material, to said Simonds. By the fourth clause of said trust agreement it was provided that after the death of said Simonds " any real estate or personal property remaining after said Rowley and Bumpus shall have taken therefrom their charges for fees for their services in all matters . . . shall be conveyed and trans-

ferred to said Bumpus and Rowley as trustees, . . . and applied to the erection and maintainance of " said seminary. By the eighth clause of said agreement it was provided that " if at any time while the said Rowley holds the title under this agreement to the real estate . . . (in question) . . . the said Rowley and Bumpus agree that it is for the best interest of the estate to sell and convey or mortgage the same, or any part of the same, they shall have the right so to do by following the provisions in the first clause of this agreement, and invest any proceeds, . . . using any part of the interest and principal necessary to carry out the terms of this agreement." Said Simonds has now deceased and said Rowley still holds title to the lands in question.

Professor Gray, in his book on Perpetuities, says: " As has been shown, the natural meaning of a perpetuity is an inalienable, indestructible interest. In this sense charitable trusts are perpetuities. And this is no arbitrary doctrine, but arises from the nature of such trusts. For while, generally, a trust is not good unless there be a natural or artificial cestui que trust, charitable trusts are an exception. They are recognized as valid, but yet they do not ordinarily have any definite cestuis que trust. They are therefore inalienable, because there is no one to alienate them. No one has any alienable rights, because no one has any rights." Gray on Perpetuities, 2nd Edition, Section 590. In a note to the section above quoted he adds, " When it is said that property given on Charitable trusts is inalienable, it is not meant that such property cannot be alienated by the paramount action of the Sovereign, through the legislature or the Courts," and then cites many of the English and American decisions to that effect. And see the cases cited in Callahan, Petitioner, Land Court Decisions, p. 258, *ante*.

If necessary to the proper administration of the trust, a court of equity will order a sale even where it is forbidden by the terms of the trust instrument itself. " If the land

cannot be occupied as intended by the testatrix it is proper that it should be sold. The provision in the will that the trustees shall have no power to sell any part of Seven Oaks hardly would be construed as any intent to limit the power of the court to authorize a sale, assuming that it is possible to limit it, that is, to make a specific land inalienable forever. (Authorities cited). But, however this may be, the codicil authorizes and directs the trustees to sell any portion of the real estate which cannot be used advantageously, and taking this with the will, we are of opinion that a sale may be made." Amory v. Attorney General, 179 Mass. 89, 105.

It seems to me that the language of Professor Gray's text, if it is to be modified at all, should be modified still further. The object of a charitable trust as to land ordinarily requires, as well as implies, its inalienability; but inalienability under any and all circumstances is not a necessary, though it may be a usual, element of such a trust. Just as alienation may be authorized by the legislature or the court if necessary or expedient to the real purposes of the trust, so it may be expressly authorized by the terms of the trust itself, (in which case it would not come at all within the subject under consideration by Professor Gray) or be so obviously beneficial to the purpose and execution that a sale by the trustee would be not only impliedly authorized but. required. Such a case is put by Lord Brougham in Attorney General v. Hungerford, 2 Cl. & F. 356, 373. " An alienation might be fit; not only justifiable, not only harmless as regards the breach of trust or abuse of trust by the trustees, but might be a fit course for them to adopt, . . . where they could not do their duty to the charity if they did not alienate a part of the land." In Attorney General v. Warren, 2 Swanst 291, cited by Lord Brougham in the decision just quoted, the Master of the Rolls, Sir Thomas Plumer, had said (302) " There is no positive law which says that in no instance shall there be an absolute alienation. The principle that

governs all the cases is this, that trustees are bound to a provident administration of the fund for the benefit of the Charity. . . . Alienation, not improvident but beneficial to the charity and conformable to the rule which ought to guide the trustees, may be good."

In Magdalen Coll. v. Attorney General, 6 H. L. C. 189 the opinion rendered by the Lord Chancellor, Lord Cransworth, begins with the statement, " Though there certainly is not, as far as I am aware, any positive law which prohibits the sale of charity lands, yet it is obvious that such a sale can very rarely be justified." And so in Attorney General v. South Sea Company 4 Beav. 453, the Master of the Rolls says: " It is plain that in ordinary cases, a most important part of the duty is to preserve the property; but it may happen that the purposes of the charity may be best sustained and promoted by alienating the specific property. The law has not forbidden the alienation, and this court upon various occasions with a view to promote the permanent interest of charities has not thought it necessary to preserve the property in specie, but has sanctioned its alienation. That which the Court might have done upon its own consideration of what would have been beneficial to the charity might have been done by trustees upon their own authority, in the exercise of their legal powers; and however imprudent it may have been in trustees to take so great a risk upon themselves, and in other parties to contract with them under such circumstances, yet if it should appear upon subsequent investigation that the transaction was fair and beneficial to the charity it does not appear to be the duty of the Court to set it aside." Sugden commenting on Lord Brougham's observations in Attorney General v. Hungerford says: " It would not be safe to act upon them. No prudent purchaser would accept a conveyance." (Sugden, Law of Property 535.) Following the trend of the judicial decisions, it has now been provided in England by statute that the trustees

in whom the lands of the charity are vested cannot sell them under a power of sale contained in the deed otherwise than with the authority of Parliament, or of the court, or with the approval of the charity commissioners. In rendering judgment in the case of Re Mason's Orphanage, [1896] 1 Ch. 54, affirmed in [1896] 1 Ch. 596, Stirling, J., explained the state of the law on this question before the passage of the Charitable Trusts Act as follows: " A sale, lease or mortgage made in accordance with an express power was good. On this I may refer to the judgment of Lord Cransworth (then vice chancellor), in Atty. Gen. v. Hardy, 1 Sim. N. S. 338, where it was held that a trustee of a Wesleyan chapel under a deed which contained a power of raising money by mortgage might become himself a mortgagee, and if he did so become, might exercise all the rights of a mortgagee, although in opposition to the trusts. Even when no express power of sale existed, a sale might be made of the charity estate, provided it were in accordance with a provident administration of the estate for the benefit of the charity; but the purchaser took subject to the obligation of showing that the sale was beneficial to the charity and justified by the circumstances." The matter has also been regulated by statute in some of the United States. 5 Am. & Eng. Ency. 914. Whether under statutory regulation or not, however, the principle seems to be as stated in Re Mercer's Home 162 Pa. State 232, that " nothing short of a plain unequivocal direction that no part of the land shall be parted with for any purpose whatever ought to be held sufficient to restrain the managers from doing that which the interests of the charity under their control require of them." In a Missouri case the court recognizes the general principle laid down by Professor Gray, but qualifies it so far at least as an express power of sale is concerned. " When the trustees are invested with an express power to make the alienation in question, there is, of course, no room for contention. In the absence

of such an express power, it being the very essence of a charity that it shall endure forever, lands which are made the subject of a charitable trust are deemed to be alike inalienable, whether it is so declared in terms or not." Lackland v. Walker, 151 Mo. 210.

In Massachusetts a power of alienation has been recognized in several cases. " When such property is held under trust for the general purposes of the society and cannot otherwise be conveyed, the legislature has constitutional power to authorize the trustees to convert their real estate into personal in order that the avails may be reinvested and otherwise appropriated for the purposes of the trust." Sohier v. Trinity Church, 109 Mass. 1, 17; and see also Pine Street Society v. Weld, 12 Gray 570. In Amory v. Attorney General also, the court in addition to its own powers exercised under the doctrine of cy pres (a very different principle from that now under discussion) recognizes and upholds the power of sale given to the trustees in the codicil to the testator's will. Amory v. Atty. Gen. 179 Mass. 89, 105. It is the risk and danger to a purchaser, however, so incisively stated by Lord St. Leonards in his comments on Atty. Gen. v. Hungerford, that has led to such statutory provisions as are found in the English Charitable Trusts Act, the Price Act in Pennsylvania, and presumably the Massachusetts Act of 1906 under which this petition is brought. That this court can determine the necessity for any proposed specific action and any other facts required therefor seems clear.

This trust agreement goes much further, however. It vests, or attempts to vest, full discretionary power in regard thereto in the two individuals selected by the settlor for that purpose. But this was one of his principal purposes, preliminary to, or rather an integral part of, his whole scheme. They are to use the trust estate by converting such part of it into money as and when they personally deem it for the best interests of the trust so to do, first in the erection and

thereafter in the maintainance, of the seminary. This is neither hostile to, nor dehors the purpose of the trust. On the contrary it is one of the terms of the trust, and proper to its reasonable administration, that the petitioner has power to sell and convey, or mortgage, from time to time, the whole or any part of the first three parcels of land described in said deed from Simonds to Rowley with the written assent and release of all right, title and interest therein by said Bumpus, and a certification by them that such conveyance is for the best interest of said trust estate.

Decree accordingly.